UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MEMO ENDORSED

MIGUEL ROMAN and KIMBERLY ROSADO, individually and on behalf of all others similarly situated,

Plaintiffs,

-v.-

GVC LTD.,

Defendant.

CIVIL ACTION NO.: 1:26-cv-03432-JHR-SLC

**JOINT ELECTRONIC DISCOVERY SUBMISSION NO. 1 AND ~~PROPOSED~~ ORDER**

One or more of the parties to this litigation have indicated that they believe that relevant information may exist or be stored in electronic format, and that this content is potentially responsive to current or anticipated discovery requests. This Joint Submission and Proposed Order (and any subsequent to this) shall be the governing document(s) by which the parties and the Court manage the electronic discovery process in this action. The parties and the Court recognize that this Joint Submission and Proposed Order is based on facts and circumstances as they are currently known to each party, that the electronic discovery process is iterative, and that additions and modifications to this Submission may become necessary as more information becomes known to the parties.

**1. Brief Joint Statement Describing the Action**

Plaintiffs Miguel Roman and Kimberly Rosado, former employees of Defendant GVC Ltd., bring this putative class action on behalf of themselves and similarly situated former employees under the Worker Adjustment and Retraining Notification Act, 29 U.S.C. § 2101 et seq. Plaintiffs allege that Defendant terminated their employment, and that of other employees, on or about June 26, 2025, without the sixty (60) days' advance written notice the Act requires, and

seek back pay and benefits for each affected employee for the period of the violation. Defendant denies liability and contends, among other things, that Plaintiffs did not suffer an employment loss because they accepted employment with Pride Transportation Services, Inc. following an asset sale. Discovery is proceeding in phases under the Court's August 17, 2026 Order (ECF No. 20).

a. **Estimated amount of Plaintiff(s)' Claim(s):**

__ Less than $100,000
__ Between $100,000 and $999,999
_**X**_ Between $1,000,000 and $49,999,999
__ More than $50,000,000 Equitable Relief
__ Other (if so, specify)
GVC does not join plaintiffs' estimate and states no estimate of plaintiffs' claim.

b. **Estimated amount of Defendant(s)' Counterclaim(s)/Cross-Claim(s):**

__ Less than $100,000
__ Between $100,000 and $999,999
__ Between $1,000,000 and $49,999,999
__ More than $50,000,000 Equitable Relief
_**X**_ Other (if so, specify): **NONE**

**2.** **Competence**: Counsel certify that they are sufficiently knowledgeable in matters relating to their client(s)' technological systems to competently discuss issues relating to electronic discovery, or have involved someone competent to address these issues on their behalf.

GVC's counsel has requested from GVC a written identification of its electronic mail, messaging and data systems and has not yet received it, and will supplement this paragraph and paragraph 7(a) below promptly upon receipt.

**3.** **Meet and Confer:** Pursuant to Fed. R. Civ. P. 26(f), counsel must meet and confer regarding matters relating to electronic discovery before the Initial Pretrial Conference (the Rule 16 Conference). Counsel now certify that they met and conferred to discuss these issues on **October 19, 2026.**

4. **Unresolved Issues: After the meet-and-confer conference(s) taking place on the date(s) listed above, the following issues remain outstanding and/or require court intervention: ___ Preservation; ___ Search and Review; ___ Source(s) of Production; ___ Form(s) of Production; _X_ Identification or Logging of Privileged Material; ___ Inadvertent Production of Privileged Material; ___ Cost Allocation; and/or ___ Other. Please briefly describe any specific issues below:**

The parties have not agreed whether the exclusion from privilege logging for a party's communications with its own counsel of record should be keyed to a single calendar date. Plaintiffs propose April 15, 2026. GVC's position is that a single fixed date is reciprocal in form only, because this action was commenced on April 27, 2026 and GVC's counsel of record was engaged in connection with this dispute well before that date while plaintiffs' counsel was engaged shortly before filing, so that an April 15, 2026 line would excuse plaintiffs from logging substantially all of their attorney communications while requiring GVC to log its own. GVC proposes that neither side log communications with its counsel of record in this action concerning the subject matter of this action without regard to date, or, if a date is used, that the line be the date on which each party first engaged its counsel of record in connection with this dispute, each party stating that date. The parties' positions are otherwise as stated in Section III.F of ECF No. 23.

The Court refers the parties to the post conference Order at Dkt. No. 25, in which the Court resolved the parties' dispute regarding privilege logging. (Dkt. No. 25 at 2), along with the transcript of the October 20, 2026 conference.

**To date, the parties have addressed the following issues:**

5. **<u>Preservation:</u>**

a. The parties have discussed the obligation to preserve potentially relevant electronically stored information and agree to the following scope and methods for preservation, including but not limited to: retention of electronic data and implementation of a data preservation plan; identification of potentially

relevant data; disclosure of the programs and manner in which the data is maintained; identification of computer system(s) utilized; and identification of the individual(s) responsible for data preservation, etc. To the extent that the parties have reached agreement as to preservation methods, provide details below:

Plaintiff(s):

**Retention and Preservation Plan.** Plaintiffs will preserve potentially relevant ESI within their possession, custody, or control. Plaintiffs' counsel has instructed each Plaintiff in writing to preserve such ESI and not to delete, discard, or alter it. Plaintiffs' access to Defendant's email, network, and HR systems ended on or about their termination dates. Plaintiffs therefore cannot preserve or retrieve ESI on those systems, and their preservation obligations extend only to ESI they currently possess or control. Any Plaintiff holding a company-issued device or copies of Defendant's documents will preserve them unaltered, pending a meet and confer with Defendant.

**Identification of Potentially Relevant Data. Plaintiffs' potentially relevant ESI includes termination or WARN notices received, pay stubs and benefits records, severance documents, and personal emails, text messages, and social media messages about their employment or termination, from the commencement of each Plaintiff's employment with GVC as to employment, pay and benefits records, and from June 1, 2025 as to communications, to the present. Plaintiffs will also preserve records of their offers of employment with Pride Transportation Services, Inc., their correspondence with the New York State Department of Labor, their Forms W-2, and documentation of any out-of-pocket medical expenses claimed as damages. Preserving these materials does not waive Plaintiffs' objections to their production, as stated in the Joint Status Report (ECF No. 23).**

**Programs, Systems, and Manner of Maintenance.** Plaintiffs maintain this ESI on personal devices and accounts, including personal mobile phones, email accounts, and social media accounts. Plaintiffs will identify the general types of devices and accounts on which they keep relevant ESI within twenty-one (21) days of the entry of this Order.

**Individual Responsible for Preservation.** Plaintiffs' counsel of record is responsible for advising Plaintiffs of and monitoring compliance with their preservation obligations.

Defendant(s):

Retention and Preservation Plan. GVC has issued and maintains a written litigation hold in this action. GVC has suspended the routine deletion, overwriting and recycling of electronic mail and of the data of the custodians identified below, has instructed those custodians to preserve electronic mail, text and other messages, documents and any audio or video recordings bearing on the matters in suit, and has instructed them not to dispose of, wipe or reset any device on which such material resides.

Identification of Potentially Relevant Data. GVC's potentially relevant ESI includes internal communications concerning the decision that gave rise to the separations at issue and concerning the transition of employees; the notices given to employees, to the New York State Department of Labor and to other recipients, and their preparation and transmission; communications with the New York City Department of Education concerning the contract, its amendments and extensions and the routes; communications with Pride Transportation Services, Inc. and First Student, Inc.; communications with Local 1181 and any other labor organization; employee rosters and personnel, payroll, timekeeping and benefits records; and an audio recording of a June 26, 2025 meeting. GVC's preservation is not limited to the production date ranges it proposes below.

Programs, Systems and Manner of Maintenance. GVC maintains this ESI in its corporate electronic mail system, in word processing, spreadsheet and portable document format files on workstations, in the hosted payroll and timekeeping system maintained in house, and in text and other messages on devices used by its custodians. GVC is completing an inventory of these systems and will identify each of them, with its platform, within twenty-one (21) days of the entry of this Order.

Individual Responsible for Preservation. Michael Townsend, GVC's compliance contact, acting with counsel, is responsible for advising GVC's custodians of and monitoring compliance with GVC's preservation obligations.

a. State the extent to which the parties have disclosed or have agreed to disclose the dates, contents, and/or recipients of "litigation hold" communications: Plaintiffs' counsel has issued written preservation instructions to each Plaintiff. The parties have not agreed to disclose the contents of litigation hold communications, which are privileged. Upon request, each party will disclose the dates on which its litigation hold communications were issued and the names or job titles of their recipients.

b. The parties anticipate the need for judicial intervention concerning the duty to preserve, the scope, or the method(s) of preserving electronically stored Information: None at this time.

1. **<u>Search and Review:</u>**

a. The parties have discussed methodologies or protocols for the search and review of electronically stored information, as well as the disclosure of techniques to be used. Some of the approaches that may be considered include:

the use and exchange of keyword search lists, “hit reports,” and/or responsiveness rates; concept search; machine learning, or other advanced analytical tools; limitations on the fields or file types to be searched; date restrictions; limitations on whether back-up, archival, legacy, or deleted electronically stored information will be searched; testing; sampling; etc. To the extent the parties have reached agreement as to search and review methods, provide details below:

Plaintiff(s):

**Search Methodology.** Given the limited volume of Plaintiffs’ ESI, which consists of personal devices and accounts, Plaintiffs will search and review their ESI manually rather than through keyword lists, concept search, or machine learning tools. Plaintiffs’ counsel will direct and oversee the search to locate responsive termination and WARN notices, pay and benefits records, severance documents, and communications about Plaintiffs’ employment or termination. If the volume of any Plaintiff’s ESI makes manual review impractical, Plaintiffs will meet and confer with Defendant about the use of search terms. Plaintiffs will describe the search performed for each Plaintiff in their amended discovery responses.

**Date Restrictions. Plaintiffs will limit their search to ESI created or received from the commencement of each Plaintiff’s employment with GVC as to employment, pay and benefits records, and from June 1, 2025 as to communications, to the present.**

**Fields and File Types.** Plaintiffs will search emails, text messages, social media messages, and electronic documents (such as PDFs and images) on their personal devices and accounts.

**Back-Up, Archival, Legacy, and Deleted ESI.** Plaintiffs will not search backup, archival, legacy, or deleted ESI, or ESI recoverable only through forensic means, absent agreement of the parties or a showing of good cause.

**Disclosure of Techniques.** Upon request, Plaintiffs will disclose the general sources searched and the method used for each Plaintiff's search.

Defendant(s):

**Search Methodology.** GVC will search the electronically stored information of the custodians identified below, over the date ranges stated below, by keyword searching using the terms to be chosen by GVC LTD's counsel. GVC's counsel will direct and oversee the search and review.

**Hit Reports and the Revision of Terms.** Within fourteen (14) days of the entry of this Order each party will exchange a hit report stating, for each term, the total number of documents hit, the number hit uniquely by that term and the number of documents in the resulting families. No term is binding until the hit reports are exchanged. Where a term returns a volume disproportionate to its likely yield, the parties will revise it by agreement, by narrowing it, by adding a proximity operator or by date restriction before review begins, and will address any disagreement about a term by sampling in the first instance rather than by motion.

**Fields and File Types.** GVC will search electronic mail and attachments, word processing documents, spreadsheets, portable document format files, text and other messages, and images.

**Back-Up, Archival, Legacy and Deleted ESI.** GVC will not search back-up, archival, legacy or deleted ESI, or ESI recoverable only through forensic means, absent agreement of the parties or a showing of good cause under Fed. R. Civ. P. 26(b)(2)(B).

**Advanced Analytical Tools.** GVC does not propose the use of technology-assisted review, predictive coding or concept search, and reserves its position should any party propose it.

**Disclosure of Techniques.** With each production GVC will state the sources searched, the date range applied and the terms run.

**Reciprocity.** GVC asks that plaintiffs apply unaided manual review. Plaintiffs' ESI resides principally in text messages, messaging applications and social media accounts, which are the sources most likely to hold communications among former GVC employees about the notice each received, the work each was offered and this action, and an unaided manual review of those sources is not capable of being tested. If plaintiffs conduct a manual review, GVC asks that each plaintiff state, for each account and device, the date of the search, the person who performed it, the account or device searched, the date range applied and any terms used, which is the same description GVC undertakes to give above and which plaintiffs' amended responses already undertake to provide.

b. State if the parties anticipate the need for judicial intervention concerning the search and review of electronically stored information: None at this time.

**2. <u>Production:</u>**

a. Source(s) of Electronically Stored Information: The parties anticipate that discovery may occur from one or more of the following potential source(s) of electronically stored information [e.g., email, word processing documents, spreadsheets, presentations, databases, instant messages, web sites, blogs, social media, ephemeral data, etc.]:

**Plaintiff(s):**

Plaintiffs anticipate that discovery from Plaintiffs may occur from the following sources of ESI within their possession, custody, or control: personal email accounts; text messages and

messaging applications on personal mobile phones; social media accounts; and electronic documents and images (such as PDFs, scanned documents, and photographs) stored on personal devices or personal cloud storage accounts. These sources may contain termination or WARN notices, pay stubs, benefits records, severance documents, and communications about Plaintiffs' employment or termination. Plaintiffs also hold certain paper records, such as pay statements, Forms W-2, and other employment records, which they will scan and produce electronically.

Plaintiffs do not have access to Defendant's email, network, HR, payroll, or timekeeping systems, and no discovery of those sources will occur from Plaintiffs.

**Defendant(s):**

GVC anticipates that discovery from GVC may occur from the following sources of ESI within its possession, custody or control: its corporate electronic mail system; word processing documents, spreadsheets, presentations and portable document format files on individual workstations and on shared and cloud storage; the hosted payroll, timekeeping and benefits system maintained in house; text and multimedia messages and messaging applications on devices used by its custodians, including personally owned devices to the extent used for company business; electronic signature records; and audio recordings. GVC will identify each of these systems, with its platform, within twenty-one (21) days of the entry of this Order.

GVC does not have access to plaintiffs' personal email accounts, personal mobile devices, social media accounts or personal cloud storage, and no discovery of those sources will occur from GVC.

b. Limitations on Production: The parties have discussed factors relating to the scope of production, including but not limited to: (i) number of custodians; (ii) identity of custodians; (iii) date ranges for which potentially relevant data will

be drawn; (iv) locations of data; (v) timing of productions (including phased discovery or rolling productions); and (vi) electronically stored information in the custody or control of non-parties. To the extent the parties have reached agreements related to any of these factors, describe below:

**Plaintiff(s):**

**(i) Number of Custodians.** Plaintiffs' production will be drawn from two (2) custodians.

**(ii) Identity of Custodians.** Plaintiffs' custodians are the two named Plaintiffs. Under paragraph 3 of the Court's August 17, 2026 Order (ECF No. 20), Phase I named-plaintiff discovery is limited to Mr. Roman and Ms. Rosado, and Plaintiffs will not produce ESI from absent putative class members. If the Court grants leave to add named plaintiffs, the parties will meet and confer about adding them as custodians.

**(iii) Date Ranges. Plaintiffs will produce responsive ESI created or received from the commencement of each Plaintiff's employment with GVC as to employment, pay and benefits records, and from June 1, 2025 as to communications, to the present. This date range is subject to Plaintiffs' objections to the scope of production stated in the Joint Status Report (ECF No. 23), including as to records of Pride Transportation Services, Inc., beyond each Plaintiff's first thirty (30) days of employment.** *

**(iv) Locations of Data.** Plaintiffs' ESI is located on their personal email accounts, personal mobile phones, social media accounts, and personal devices or cloud storage accounts.

**(v) Timing of Productions.** Plaintiffs will produce responsive ESI on a rolling basis. Plaintiffs' first additional production will be served by October 20, 2026, and production will be substantially completed by October 27, 2026, as stated in the Joint Status Report (ECF No. 23).

* The Court refers the parties to the post conference Order at Dkt. No. 25, in which the Court resolved the parties' dispute regarding date ranges for documents concerning Pride Transportation. (Dkt. No. 25 at 2), along with the transcript of the October 20, 2026 conference.

**(vi) ESI in the Custody or Control of Non-Parties.** Plaintiffs' ESI held by third-party service providers (such as email, cellular, and social media providers) is within Plaintiffs' control only to the extent Plaintiffs can access it through their own accounts. Plaintiffs will produce responsive ESI from those accounts but will not seek records directly from the providers. Records held by Pride Transportation Services, Inc. are not within Plaintiffs' possession, custody, or control except to the extent Plaintiffs hold copies. Plaintiffs understand that Defendant intends to serve Rule 45 subpoenas on Pride Transportation Services, Inc. and First Student, Inc., and Plaintiffs reserve all objections to those subpoenas.

**Defendant(s):**

**(i) Number of Custodians.** GVC's production will be drawn from five (5) custodians.

**(ii) Identity of Custodians.** GVC's custodians are Michael Lavallie (President), Michael Townsend (Compliance), Michael Stocks (General Manager), Marlene Baez (Human Resources) and Kristine Dagnino (Payroll). GVC reserves the right to add the supervisor or supervisors responsible for school age routing and for its pre-kindergarten operation upon their identification, and will notify plaintiffs if it does so.

**(iii) Date Ranges.** GVC will produce responsive ESI created or received from November 1, 2024 through December 31, 2025 and, as to the Department of Education contract instruments and their amendments and extensions and the collective bargaining agreements and memoranda of agreement, from January 1, 2020 through December 31, 2025. GVC's preservation is not limited to these ranges.

**(iv) Locations of Data.** GVC's ESI is located at its Bronx, New York facility, with its payroll and timekeeping, and on the devices of its custodians.

**(v) Timing of Productions.** GVC served its responses and objections and produced documents Bates-numbered GVC000001 through GVC001093 on October 8, 2026, and supplemented that production with four documents at GVC001094 through GVC001107 on October 12, 2026. GVC will produce responsive ESI collected under this Order on a rolling basis and will substantially complete that production within thirty (30) days of the entry of this Order, subject to any extension the volumes disclosed by the hit reports require. No ESI has been collected from any electronic mail system to date, other than in the production above, no protocol having been in place.

**(vi) ESI in the Custody or Control of Non-Parties.** Records held by Pride Transportation Services, Inc. and First Student, Inc. and NYSDOL are not within GVC's possession, custody or control. GVC will serve document subpoenas under Fed. R. Civ. P. 45 on Pride Transportation Services, Inc. and First Student, Inc. and NYSDOL within Phase I and will give plaintiffs the notice Fed. R. Civ. P. 45(a)(4) requires.

c. Form(s) of Production:

i. The parties have reached the following agreements as to the form(s) of productions:

**Plaintiff(s):**

**Emails and Electronic Documents.** Searchable PDF format, with attachments produced immediately following their parent email.

**Text Messages and Messaging Applications.** PDF or screenshot images showing the sender, recipient, date, and time of each message, to the extent that information is displayed on the device.

**Social Media.** PDF or screenshot images showing the content, account name, and date of each post or message.

**Photographs and Images and Excel spreadsheets.** Native format or PDF.

**Bates Numbering.** All productions will bear unique Bates numbers, using the prefix ROMAN or ROSADO to identify the producing Plaintiff, and any applicable confidentiality designation under the Protective Order (ECF No. 18). Documents previously produced at PLAINTIFFS000001–000004, all of which are Ms. Rosado's, will keep their existing Bates numbers.

**Native Files and Metadata.** Except as provided in the exceptions below, native files or metadata will be produced only upon a reasonable request for specific documents for which the PDF or image version is insufficient, in which case the parties will meet and confer.

**Defendant(s):**

**Emails and Electronic Documents.** Text-searchable portable document format, with attachments produced immediately following their parent message. No parent will be produced without its attachments and no attachment without its parent.

**Bates Numbering and Designations.** GVC's production bears the prefix GVC and a sequential six-digit number in the lower right corner of each page, with any confidentiality designation made under the Protective Order (ECF No. 18) in the lower left corner. The series runs from GVC000001, is not restarted, and no document already produced will be renumbered.

**Documents Already Produced.** Nothing in this Submission requires either party to reproduce in a different form any document it has already produced.

**Native Files and Metadata.** Except as provided in the exceptions below, GVC will produce native files or metadata upon a reasonable request for specific documents for which the portable document format version is insufficient, in which case the parties will meet and confer.

**Redactions.** Documents requiring redaction under Fed. R. Civ. P. 5.2 or under the Protective Order will be produced as redacted images and the Bates number will be unchanged.

**Text and Messaging Content.** GVC asks, as to both parties, that a production of text or messaging content show the sender, the recipient, the date and the time of every message, and that each conversation be produced in continuous form for the period produced rather than as selected individual messages.

ii. Please specify any exceptions to the form(s) of production indicated above (*e.g.*, word processing documents in TIFF with load files, but spreadsheets in native form):

**Spreadsheets.** Spreadsheets (such as Excel files) will be produced in native format.

**Databases and Structured Data.** Data from databases and structured systems, including HRIS, payroll, timekeeping, and benefits systems, will be produced as exports in a reasonably usable format such as Excel or CSV, including field names. The parties will meet and confer about the fields to be produced.

**Audio and Video Files.** Audio and video files will be produced in native format.

**Presentations.** The parties will produce presentations (such as PowerPoint files) in native format if they contain speaker notes, comments, or hidden slides.

**Slip Sheets.** Each document produced in native format will include a slip sheet bearing its Bates number and any confidentiality designation, and the native file will be named with its Bates number.

iii. The parties anticipate the need for judicial intervention regarding the following issues concerning the form(s) of production: None at this time.

d. Privileged Material:

i. Identification: The parties have agreed to the following method(s) for the identification (including the logging, if any, or alternatively, the disclosure of the number of documents withheld), and the redaction of privileged documents:

**Logging.** Each party will provide a privilege log for responsive documents withheld on the basis of privilege or work-product protection on or before January 4, 2027, the privilege log deadline set by the Court. The log will identify each document's date, author, recipients, the privilege asserted, and a general description of the subject matter sufficient to assess the claim without revealing privileged information.

**Exclusions from Logging. The parties need not log communications between a party and its counsel of record in this action, or counsel's work product, concerning the subject matter of this action. The**

**parties have not agreed whether that exclusion should be keyed to a calendar date, and their positions are stated at paragraph 4 above and in Section III.F of ECF No. 23.**

**Redactions.** Each party will mark each redaction "Redacted – Privileged" and will include redacted documents on its privilege log, identified by Bates number.

ii. Inadvertent Production/Claw-Back Agreements: Pursuant to Fed R. Civ. Proc. 26(b)(5) and Fed. R. Evid. 502(e), the parties have agreed to the following concerning the inadvertent production of privileged documents (*e.g.* "quick-peek" agreements, on-site examinations, non-waiver agreements or orders pursuant to Fed. R. Evid. 502(d), etc.):

**Rule 502(d) Order.** The parties jointly request that the Court enter an order under Fed. R. Evid. 502(d) providing that the production of any privileged or work-product protected document in this action, whether inadvertent or otherwise, does not waive privilege or protection in this action or in any other federal or state proceeding.

**Claw-Back Procedure.** A producing party that discovers it has produced privileged or protected material will notify the receiving party in writing, identifying the material by Bates number and the basis for the claim. Within 7 days of notice, the receiving party will return, sequester, or destroy the material and any copies, will not use or disclose it, and will confirm

compliance in writing. The producing party will provide a privilege log entry for the material within 7 days of the notice.

**Receiving Party's Duty.** A receiving party that discovers material that reasonably appears to be privileged or protected will promptly notify the producing party and will refrain from reviewing it further pending the producing party's response.

**Challenges.** A receiving party may challenge a claw-back claim by filing a motion within 14 days of notice and submitting the material to the Court under seal or for *in camera* review. The receiving party may not use the fact or circumstances of the production as a basis for its challenge. The producing party bears the burden of establishing the privilege or protection.

**No Quick-Peek or On-Site Examination.** The parties have not agreed to any quick-peek or on-site examination procedure.

iii. The parties have discussed a 502(d) Order: Yes _**X**_; No ___

*The provisions of any such proposed Order shall be set forth in a separate document and presented to the Court for its consideration.*

e. Cost of Production: The parties have analyzed their client's data repositories and have estimated the costs associated with the production of electronically stored information. The factors and components underlying these costs are estimated as follows:

i. Costs:

**Plaintiff(s):**

Plaintiffs have analyzed their data repositories, including personal email accounts, mobile phones, social media accounts, and personal devices or cloud storage. Plaintiffs estimate the costs of producing their ESI as follows:

**Collection.** Plaintiffs' counsel will collect responsive ESI directly from each Plaintiff through exports, downloads, and screenshots from their personal accounts and devices. Plaintiffs do not anticipate retaining an e-discovery vendor or performing forensic collection. Estimated cost: $5,000.00, consisting primarily of attorney and staff time.

**Processing and Review.** Because Plaintiffs' ESI is limited in volume, counsel will review it manually without processing software, search analytics, or hosting platforms. Estimated cost: $5,000.00, consisting of attorney and staff review time.

**Production.** Plaintiffs will convert responsive ESI to PDF or image format and apply Bates numbering and confidentiality designations using standard software. There are no additional estimated costs associated with production that are known to Plaintiffs at this time.

**Total Estimated Cost.** $10,000.00.

**Cost Allocation.** Plaintiffs will bear their own production costs. If Defendant requests forensic imaging of any Plaintiff's device or account, or production beyond the scope described above, Plaintiffs propose that Defendant bear the associated costs.

**Defendant(s):**

GVC has begun an analysis of its data repositories, which include its corporate electronic mail system, individual workstations, shared and cloud storage, the hosted payroll and timekeeping system maintained in house, and the devices of its custodians. GVC does not anticipate retaining an electronic discovery vendor or performing forensic collection. Collection will be performed by GVC with counsel, and processing and review by counsel and staff, so that GVC's costs will

consist primarily of attorney and staff time. GVC cannot responsibly state a figure until the inventory of its systems is complete and the hit reports described in paragraph 6 above are exchanged, which this Submission fixes at twenty-one and fourteen days from entry respectively, and GVC will supplement this paragraph with an estimate within twenty-one (21) days of the entry of this Order. GVC raises proportionality under Fed. R. Civ. P. 26(b)(1) now rather than later.

**Cost Allocation.** GVC will bear its own production costs. If plaintiffs request forensic imaging of any GVC device or account, the restoration of back-up, archival, legacy or deleted data, or production beyond the scope described in this Submission, GVC proposes that plaintiffs bear the associated costs.

ii. Cost Allocation: The parties have considered cost-shifting or cost-sharing and have reached the following agreements, if any: Each party will bear its own costs of production. If a party requests forensic imaging of another party's devices or accounts, or production beyond the scope described in this Submission, the requesting party will bear the associated costs.

iii. Cost Savings: The parties have considered cost-saving measures, such as the use of a common electronic discovery vendor or a shared document repository, and have reached the following agreements, if any:

The parties considered using a common electronic discovery vendor and a shared document repository and agree that neither is warranted in this action, given the differences in the volume and nature of each

party's ESI. Each party will retain its own vendor, if any, and bear its own production costs.

The parties agree to the following cost-saving measures:

**Electronic Delivery.** Productions will be served electronically by secure file transfer or download link rather than on physical media.

**Deduplication.** Each party may deduplicate its production globally across custodians, provided it identifies the custodians of any removed duplicates upon request.

**No Paper Productions.** The parties will scan and produce documents maintained in paper form electronically in searchable PDF format.

**Phasing.** The parties will meet and confer in good faith about phasing or prioritizing productions where doing so would reduce cost without prejudicing either party.

f. State if the parties anticipate the need for judicial intervention concerning the production of electronically stored information: Not at this time. The parties continue to confer on the scope of production of Pride Transportation Services, Inc. records and New York State Department of Labor records (ECF No. 23 §§ III.B–C). Any dispute that remains after conferral will be raised under Local Civil Rule 37.2.

**3. Other Issues:**

None at this time.

The preceding constitutes the agreement(s) reached, and disputes existing (if any), between the parties to certain matters concerning electronic discovery as of this date. To the extent

additional agreements are reached, modifications are necessary, or disputes are identified, they will be outlined in subsequent submissions or agreements and promptly presented to the Court.

Party: GVC LTD____________ By: Christopher Smith, Trivella & Forte, LLP ___

Party: Miguel Roman____________ By: */s/ Mariah England*____________

Party: Kimberly Rosado____________ By: */s/ Mariah England*____________

Party: ____________________ By: ____________________

Party: ____________________ By: ____________________

The next scheduled meet-and-confer conference between the parties to address electronic discovery issues, including the status of electronic discovery and any issues or disputes that have arisen since the last conference or Order, shall take place on: **November 17, 2026**, or such other date as the parties agree. The next scheduled conference with the Court for purposes of updating the Court on electronic discovery issues has been scheduled for ~~October 20, 2026~~. Additional conferences, or written status reports, shall be set every four (4) weeks, as determined by the parties and the Court, based on the complexity of the issues at hand. An agenda should be submitted to the Court four (4) days before such conference indicating the issues to be raised by the parties. The parties may jointly seek to adjourn the conference with the Court by Letter-Motion at least 48 hours in advance of a scheduled conference, if the parties agree that there are no issues requiring Court intervention.

Additional Instructions or Orders, if any:

The Court refers the parties to the post conference Order at Dkt. No. 25, in which the Court set the next telephone conference for **November 17, 2026 at 12:00 p.m. ET.**

Dated: October 21, 2026

SO ORDERED

SARAH L. CAVE
**United States Magistrate Judge**